UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 1:12-cr-112 |
| ) | *Collier/Carter* |
| JOSEPH MICHAELOSKI ) | |

REPORT and RECOMMENDATION

I. Introduction

Defendant Joseph Michaeloski moves to suppress statements he made to police on the ground that he did not voluntarily waive his *Miranda* rights before he was questioned. [Doc. 12]. The government has presented credible evidence that defendant voluntarily and knowingly waived his *Miranda* rights prior to giving his incriminating statements, and defendant has presented no evidence to the contrary. Accordingly, it is RECOMMENDED defendant's motion to suppress be DENIED.

II. Relevant Facts

A hearing was held before the undersigned Magistrate Judge on defendant's motion to suppress on Tuesday, November 27, 2012. Josh Melton, a special agent with the Tennessee Bureau of Investigation (TBI), was the only witness to testify.

Agent Melton received a call from the Athens Police Department on or about July 15, 2012 asking for assistance in an investigation into child pornography. The Athens Police Department had been contacted by a mother in the area who reported that her thirteen year old daughter, A.G., had been exchanging text messages with and had sent nude pictures of herself via cell phone to an adult male. That same day, July 15, 2012, Melton began an undercover

operation using A.G.'s cell phone and pretending to be A.G.. Defendant and Melton, acting as A.G., exchanged numerous text messages and eventually agreed to meet that evening for sex. They agreed to meet at a Kangaroo gas station which was close to defendant's residence that evening.

Melton and another officer arrived in one vehicle at the Kangaroo gas station at about 9:10 pm. There were two other TBI agents and a detective with the Athens Police Department there as well. Defendant texted A.G.'s phone to instruct her to come across the street from the Kangaroo station to the Eastside Plaza. Melton and the other agent drove to the Eastside Plaza, exited their vehicle, and walked toward defendant. As Melton walked toward the defendant with his gun drawn, he said three times, "Police! Get down on the ground!" Defendant did not comply. Instead he turned his back to Melton and put his hands in front of him at waist level. Melton knew at that time that defendant had previously been arrested for resisting arrest, and Melton was concerned defendant might have a weapon. Melton then executed a "controlled" take down of defendant pinning one arm down to the ground while the other officer pinned down defendant's other shoulder. Once it was determined defendant had no weapon, another officer put handcuffs on defendant, and defendant was brought to his feet.

Immediately after the arrest, Melton debriefed the other officers on the scene which took about fifteen minutes. He then returned to the defendant and removed his handcuffs. They sat on the sidewalk and talked while defendant smoked. Melton told defendant why he (Melton) was there and asked defendant's consent to search his person, his cell phone, and his residence. Melton read a waiver form for *Miranda* rights verbatim to the defendant. Neither Melton nor any other officer made threats or promises to coerce or induce the defendant to sign the waiver form. Defendant did not appear to be confused or under the influence of any substance. Melton

asked defendant if he understood his rights. Defendant said he did and signed the waiver form at 9:29 pm. (Gov. Ex. A). Melton again told defendant why he was there and he asked defendant why he was there. Defendant then gave an incriminating statement about how he had solicited nude photographs of A.G. via his cell phone. He also admitted to arranging to meet A.G. that evening to engage in sex. This conversation lasted about 15 minutes.

After the conversation, Melton again asked if he had defendant's permission to search his cell phone and his residence. Defendant agreed to a search of his cell phone. He also agreed to a search of his residence provided police also obtained consent to search from his relative who lived with him.

Melton and the officers drove to defendant's nearby residence and asked the other resident for permission which she readily gave. In the meantime, another member of the police team went to a state judge for a search warrant. After the warrant was obtained, the house was searched at approximately 11 pm. Defendant does not seek to suppress the fruits of this or any other search.

The defendant did not go with Melton to his residence. While defendant's residence was being searched, defendant was taken, at his request, to the hospital. Defendant had a laceration on the top of his head, but, during his statement to Melton after his arrest, defendant told Melton he had cut his head that same day when he stood up in the crawl space under his house. A text message defendant sent to A.G. on July 15, 2012 before defendant's arrest corroborates this statement. (*See* Gov. Ex. D. at p. 7, "I banged my head it's bleeding a little..."). Further, in other text messages defendant sent that day to A.G. prior to his arrest, defendant told A.G. he was "sick" and might have to go to the hospital. (*See e.g.,* Gov. Ex. D. at p. 2, "I might be going to the hospital..."). Defendant also had two minor abrasions or scrapes on his forehead. Melton

3

testified those could have been received when defendant was taken down or when defendant was pinned to the ground, face down, and moved his face side to side.

After Melton searched the house, he returned to the Athens Police Department. It was approximately 2 am, and defendant was brought there from the hospital at about the same time. Melton met with defendant at the police station in order to take another statement. Melton showed defendant pictures of A.G. which Melton had downloaded from defendant's cell phone. Melton then gave defendant his *Miranda* rights again by reading another waiver form verbatim. Melton asked defendant if he understood his rights and if he felt well enough at that time to talk. Defendant stated he did. He did not appear to be under the influence of any substance. No threats, offers or promises were made. Defendant signed the waiver form and proceeded to give a more detailed incriminating statement than the one he had given earlier that evening.

While defendant gave his statement, Melton took handwritten notes. When defendant was finished, Melton sat in the same room and typed up the statement from his notes on his laptop. He then gave the typed statement to defendant for his review. Defendant carefully read the typed statement and made several changes. Melton revised the statement on his laptop accordingly. After the revisions were made, Melton gave the revised statement to the defendant who reviewed it again meticulously. Melton testified this review and revision process occurred multiple times until defendant was eventually satisfied with the statement. During this second interview, defendant was offered food and drink and allowed to smoke. Defendant did not indicate at any time that he wished to discontinue making his statement. He was forthcoming and easy to talk to.

### III. Analysis

The Fifth Amendment requires Miranda warnings be given where a person is subject to custodial interrogation. *Dickerson v. United States*, 530 U.S. 428 (2000); *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977). There is no dispute that defendant was given his *Miranda* warnings and signed a waiver form for his *Miranda* rights prior to giving both of his statements after his arrest on July 15, 2012. Rather, the focus on defendant's motion is on the voluntary nature of defendant's waiver, most particularly his Fifth Amendment right not to incriminate himself.

"To be valid, waivers of Fifth Amendment rights must be 'voluntarily, knowingly and intelligently' made.") *United States v. Montgomery*, 621 U.S. F.3d 568, 573 (6th Cir. 2010) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)); *see also Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004) (The Fifth Amendment requires that a statement or confession be voluntarily, knowingly, and intelligently given to be admitted into evidence); *accord Dickerson*, 530 U.S. at 433. The government bears the burden to prove, at least by a preponderance of the evidence, that the confession or statements were voluntarily, knowingly, and intelligently given. *Seibert*, 542 U.S. at 608 n. 1; *United States v. Ostranda*, 411 F.3d 684, 696 (6th Cir. 2005); *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir. 1992).

Whether a confession was voluntarily given requires inquiry into "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." *Dickerson*, 530 U.S. at 434 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 223 (1973)). In making this inquiry, the court must consider the totality of the circumstances, "both the characteristics of the accused and the details of the interrogation." *Dickerson*, 530 U.S. at 434 (internal citations omitted). "The determination depends upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." *Dickerson*, 530 U.S. at 434. (internal citation omitted). "Coercive police activity is a necessary element for finding that a confession was

5

involuntary." *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004) (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)). Promises of leniency and threats of prosecution may also be forms of coercion which overbear an accused's will and render a confession or statement involuntary. *United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003); *Wrice*, 954 F.2d at 411.

The defendant's motion to suppress makes no specific allegations regarding coercive conduct or promises made to induce defendant to waive his *Miranda* rights -- though his motion does cite a number of cases prohibiting such conduct. In this case, however, there was no evidence that police made promises to induce defendant to waive his *Miranda* rights or engaged in coercive conduct to force incriminating statements. Plaintiff is a fifty-four year old adult with prior experience with police. He was not under the influence of any substance. He understood his rights. Fifteen minutes had elapsed from the time of his arrest to the time he gave his first statement. As he gave his first statement, he was allowed to sit and smoke, and his handcuffs were removed. He was not in distress. At the police station, he was again read his rights and he again waived them. He was in no distress. No threats or promises were made. He was offered food, drinks and cigarettes. He was not under the influence of any substance. He was very comfortable with instructing Agent Melton to make multiple changes to his statement. He was asked if he felt well enough to continue with the interview and he said he did. There was no evidence presented at the suppression hearing to indicate why defendant went to the hospital, but the undersigned concludes his condition was not serious since he was planning to have sex that evening.

Considering the totality of the circumstances, the undersigned finds police did not engage in any conduct which would have overborne defendant's will and defendant willingly,

6

voluntarily, and knowingly waived his *Miranda* rights prior to giving his statement on July 15, 2012 and his statement on July 16, 2012.

### IV. Conclusion

For the reasons stated herein, it is RECOMMENDED[1] defendant's motion to suppress be DENIED.

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).